## Phillips *v.* State of Indiana.

### [No. 23,746.  Filed January 26, 1921.]

1. **Weapons.**—*Drawing Dangerous Weapon.—Conviction.—Evidence.—Sufficiency.*—In a prosecution under §2344 Burns 1914, Acts 1905 p. 584, for drawing a revolver on others, evidence *held* sufficient to sustain a conviction.  p. 162.

2. **Criminal Law.**—*Incomplete Instructions.—Remedy.*—T h e giving of an instruction which, though complete as far as it goes, omits to state all the law on the subject to which it relates is not ground for reversal, the remedy in such a case being to request a further instruction supplying the omissions complained of.  p. 162.

3. **Criminal Law.**—*Drawing Dangerous Weapon.—Instructions. —Stating Elements of Offense.—Evidence.*—In a prosecution for drawing a revolver on others in violation of §2344 Burns 1914, Acts 1905 p. 584, where there was evidence tending to show that defendant got his revolver and ran toward the parties under the impression that they had "sicked" their bulldog on to his wife, an instruction undertaking to state the elements of the offense charged which informed the jury that, if defendant unlawfully drew a revolver and pointed it at the others, etc., not in his own defense, he should be found guilty, was erroneous, as invading the province of the jury, and as excluding consideration of the defense of defendant's wife.  p. 163.

4. **Criminal Law.**—*Instructions.—Stating Elements of Offense.*— Where an instruction in a criminal prosecution undertakes to state the elements of the offense charged, on proof of which the jury is instructed to find the defendant guilty, failure to include in such instruction a recital of facts in evidence, which are established, would constitute a defense, is error.  p. 164.

5. **Criminal Law.**—*Drawing Dangerous Weapon.—Instruction. —Consideration of Defendant's Character.*—In a prosecution for drawing a revolver on others in violation of §2344 Burns 1914, Acts 1905 p. 584, providing that on conviction defendant shall be fined not less than one dollar nor more than $500, to which may be added imprisonment not exceeding six months, where defendant was found guilty and his fine fixed at $250 on evidence merely showing that he pointed the revolver toward two persons with whom his wife was engaged in an altercation, and then put it in his pocket, and that twenty-five years before he had done something similar when the victim of an assault and had always owned a revolver, the court on

appeal can not assume that a direction to the jury to consider defendant's character, his talk and threats, and his defiance of the officers and of the law was harmless, where there was no evidence of his defiance of any officers of the law. p. 165.

From Hamilton Circuit Court; *Ernest E. Cloe,* Judge.

Prosecution by the State of Indiana against William Phillips. From a judgment of conviction, the defendant appeals. *Reversed.*

*George W. Osborn,* for appellant.

*Ele Stansbury,* Attorney-General, and *Remster A. Bingham,* for the state.

EWBANK, J.—The appellant was tried upon an affidavit which charged that he "did and then and there unlawfully and wilfully draw upon the persons of John Roe and Angeline Roe  *  *  *  a certain dangerous and deadly weapon, to wit, a revolver." He was found guilty and was fined $250.

The witnesses for the state testified, among other facts, in substance that appellant and his wife came in an automobile to the home of John and Angeline Roe, and stopped; that appellant's wife went from the highway around the house just as John Roe was starting out, and after the exchange of some words appellant's wife struck John Roe three times in the face with her fist, and "blacked" his eye and skinned his nose; that Mrs. Roe came up, and after some words were exchanged between her and appellant's wife the latter began to cry; that appellant came back to where he could see the others, with a revolver in his hand, and climbed on the fence, twenty-four feet from John Roe, and pointed the gun at him; that his wife went toward appellant, between him and John Roe, and he put the revolver in his pocket; and that appellant had for many years owned and often carried a revolver.

The witnesses for the defense testified, among other

facts, in substance that after the encounter between appellant's wife and John Roe, when Mrs. Roe came up, she called appellant's wife a "dirty hussy," and accused her of "stealing everything Sam has got," and that a big bull dog belonging to the Roe family approached and growled, and appellant's wife called to him; that appellant took his revolver out of the pocket in the door of his automobile, and ran with it to the fence, where he could see the other parties and the dog; that appellant had carried the revolver in the automobile for several months as a protection in traveling; that, when appellant heard a woman yell, and heard a dog whine and bark he thought Mrs. Roe had "sicked" the bulldog on his wife, and that he reached into the car door, grabbed the gun and ran to the fence and jumped over it, and when he got where he could see the others he put the gun in his pocket and walked toward his wife and tried to get her to come out of the yard; that appellant had heard Mr. and Mrs. Roe say that the dog was so vicious that if they "sicked" him on anything he would tear it up, and, not seeing John, but only Mrs. Roe, he thought she had "sicked" the dog on his wife; that was what appellant had in mind when he went over the fence with the gun; that appellant grabbed the gun because he heard the dog and thought that the dog had hold of his wife and that Mrs. Roe had "sicked" the dog on her; that was the reason he got the gun—because of the dog they had.

The evidence further showed that Mrs. Roe was an aunt of Mrs. Phillips, and the "Sam" referred to was the father of Mrs. Phillips, with whom she and appellant lived on the father's farm, under an arrangement with a guardian appointed for the father; and that he had left the home of Mr. and Mrs. Phillips and gone to the home of Mr. and Mrs. Roe two or three days be-

fore the time in question; and that appellant was fifty-five years old and John Roe was fifty-nine. Seven witnesses testified that appellant's general reputation for peace and quietude in the neighborhood in which he lived was good, the testimony of some of them being qualified a little on cross-examination.

There was no evidence that the appellant had made any threats, except that he threatened to kill the dog if it bit him, and that, twenty-five years before, he drew a gun on Sam Burton, (whose daughter he thereafter married) who assaulted him with a single-tree; and there was no evidence at all that he had ever defied any officers, or had ever defied the law.

The overruling of appellant's motion for a new trial is assigned as error, under which assignment it is urged that the verdict is not sustained by the evidence

1. and is contrary to law, and that the court erred in giving each of the instructions numbered 10 and 15. There was ample evidence from which

2. to find the appellant guilty if the jury believed it, and did not believe the explanations of his acts offered by the defense. And while instruction No. 15 is incomplete, it correctly states the law as far as it goes. If it had told the jury that, in case the defendant was proved to be guilty beyond a reasonable doubt, his previous good character for peace and quietude "could not avail," or "was immaterial for any purpose," or that such good reputation was "only competent for the jury to consider * * * in determining the guilt or innocence of the defendant," and had thereby excluded the consideration of such evidence in fixing the penalty to be imposed, a different question would be presented. *Hundley* v. *State* (1910), 173 Ind. 684, 687, 91 N. E. 225; *Scherer* v. *State* (1919), 188 Ind. 14, 19, 121 N. E. 369. But where an instruction contains no misstatement of the law, is correct as far

as it goes, but merely omits to state all of the law on the subject to which it relates, as is true of the one under consideration, the defendant's remedy is to request a further instruction supplying what has been omitted, and he cannot successfully except to the incomplete instruction as being erroneous. *Harris* v. *State* (1900), 155 Ind. 265, 271, 58 N. E. 75; *Corn* v. *State* (1912), 177 Ind. 158, 97 N. E. 421; Ewbank, Criminal Law §491.

Instruction No. 10, given by the court, reads as follows: "If you find that the accused, at the time and place and in the manner and form charged in said affidavit, unlawfully drew a revolver upon the persons of John Roe and Angeline Roe, and then pointed it at them or either of them, or threatened to use it when already drawn upon him or her or both of them, and that such revolver was not drawn in defense of the person accused, you should find him guilty of drawing a deadly weapon, as charged in said affidavit, and in the event you find him guilty only of drawing a deadly weapon, then it is incumbent upon you to fix his punishment, and in fixing such punishment, you may take in consideration the kind and character of a man he is, if this fact is shown by the evidence, his talk and threats, if any, his defiance of the officers and the law, if any, and such facts as appear to you, in fixing a just punishment for him; and you may fix his punishment at a fine of any sum not less than one dollar nor more than five hundred dollars, to which you may add imprisonment in the county jail for a period not exceeding six months."

As applied to the evidence tending to show that appellant got his revolver and ran toward Mr. and Mrs. Roe under the impression that their bulldog, which was with them, had been "sicked on" his wife, and that it was vicious and would tear whatever it was "sicked

on," after he had heard the sound of the fighting, the loud talking, the barking and growling of the dog, and his wife's call to him, this instruction was erroneous.

The statute under which appellant was prosecuted and convicted reads as follows: "Whoever draws or threatens to use, any pistol, dirk, knife, slung-shot or other deadly or dangerous weapon, already drawn upon any other person, shall be deemed guilty of a misdemeanor, and, on conviction, shall be fined not less than one dollar nor more than five hundred dollars, to which may be added imprisonment in the county jail not exceeding six months: Provided, that the provisions of this section shall not apply to a person drawing or threatening to use such dangerous or deadly weapon in defense of his person or property or in defense of those entitled to his protection by law." §2344 Burns 1914, Acts 1905 p. 584, §448.

Since there was some evidence to the effect that the appellant "drew" his revolver for the purpose and with the intention of defending his wife against an attack which he believed was being made upon his wife by Angeline Roe by "sicking" a vicious bulldog on her, this instruction that, if the weapon was drawn and pointed, but "was not drawn in defense of the person of the accused," appellant should be found guilty, invaded the province of the jury. A man's wife
4.   is one of "those entitled to his protection." And where an instruction undertakes to state the elements of the alleged offense charged, on proof of which the jury is told that "you should find the defendant guilty," failure to mention facts of which there is evidence that, if established, would constitute a defense, is error. Hunter v. State (1885), 101 Ind. 241, 243; Gipe v. State (1905), 165 Ind. 433, 438, 75 N. E. 881, 1 L. R. A. (N. S.) 419, 112 Am. St. 238.

There was no evidence that the appellant had ever

threatened to shoot anybody, except as he was shown to have pointed the revolver at John Roe and his wife, and then put it in his pocket, and to have drawn a revolver twenty-five years before when assaulted with a single-tree. And there was no evidence at all of his defiance of any officers or of the law. On cross-examination of the different character witnesses the prosecuting attorney asked some of them if they had heard that appellant drew a gun on Sam Burton, or Truman Dunn, or Bob Coppock. But all of these questions were answered in the negative, and the state did not introduce nor offer any evidence that he ever threatened any of them, or defied them, or that they were officers.

The minimum penalty for the offense with which appellant was charged is a fine of $1. He was fined $250 on evidence, which merely showed that he

5. pointed a gun toward two persons with whom his wife was fighting, and then put it in his pocket, and that twenty-five years before he had done something similar, and had always owned a revolver. What rumors or suggestions of previous acts on his part may have reached the jury, in addition to the suggestion contained in the questions whether witnesses had heard of his drawing a gun on the men named, the court cannot know. But we cannot assume that the direction to consider "the character of man he is   *   *   *   his talk and threats   *   *   *   his defiance of the officers and the law," was harmless. And he was entitled to a verdict based upon the evidence, and not upon mere rumors and suggestions.

The judgment is reversed, and the trial court is directed to sustain appellants' motion for a new trial.