# Fritz *v.* State of Indiana.

[No. 22,206. Filed November 7, 1912.]

1. Criminal Law.—*Trial.—Instructions.*—In the trial of a criminal cause it is error to instruct that the verdict should be given to the side on which predominates the weight of the evidence. p. 465.

2. Criminal Law.—*Evidence.—Burden of Proof.*—One cannot be convicted of even a minor crime or misdemeanor merely by a preponderance of the evidence, nor can a defendant be required to prove himself guiltless by a preponderance of the evidence. p. 466.

3. Criminal Law.—*Evidence.—Weight and Sufficiency.—Reasonable Doubt.*—To warrant a conviction for a crime, every element of the offense charged must be proved beyond a reasonable doubt, while, on the other hand, if the evidence for the accused is merely sufficient to raise a reasonable doubt of the establishment of any one essential element· of the crime, an acquittal is required. p. 466.

4. Criminal Law.—*Capacity to Commit Crime.—Intent.*—Without a criminal intent there is no crime, and without mental capacity for it there can be no criminal intent. p. 466.

5. Homicide.— *Evidence.— Reasonable Doubt.— Insanity.*— Where defendant's sanity, or mental capacity to form the intent to kill, was in issue, it was an essential element of the crime charged which the State was required to prove beyond a reasonable doubt, and the evidence of his insanity was sufficient to require an acquittal, if it raised a reasonable doubt of his sanity. p. 467.

6. Homicide.— *Appeal.— Review. — Instructions. — Insanity. —* Although an erroneous instruction as to the burden of proof in a trial for murder, where every fact necessary to constitute murder in the first degree was established with no conflicting evidence, would be harmless, it is prejudicial error where the question of the defendant's sanity is in issue. p. 467.

7. Criminal Law.—*Pleas.—Insanity.—Necessity for Special Plea.*—Under the provisions of §§2069, 2070 Burns 1908, Acts 1905 p. 584, §§198, 199, when insanity is relied on as a defense it must be specially pleaded. p. 467.

8. Criminal Law.—*Appeal.—Review.—Theory Adopted in Trial Court.*—Where the prosecuting attorney and the defendant at a trial for murder assumed that the act providing for the establishment of a hospital for insane criminals (Acts 1909 p. 202) was a valid enactment and that under it the defendant could present the issue of his sanity without a special plea, and defendant was permitted to introduce evidence of his insanity under the

general plea of not guilty without objection by the prosecuting attorney who met such evidence in rebuttal, and the court, on its own motion, and at the instance of both the State and the defendant, instructed the jury on the law in relation to such issue of insanity, the rule that the appellate tribunal will act on the theory voluntarily assumed in the trial court applies, and the State will not be permitted for the first time on appeal to claim that such statute is unconstitutional for the sole purpose of evading the effect of an error in instructing the jury.    p. 468.

9.   CRIMINAL LAW.—*Trial.*—*Instructions.*—*Error in Instruction Not Cured by Other Instructions.*—Where, in the trial of a murder case defended on the ground of insanity, one of the instructions given erroneously told the jury "to give the verdict to the side on which predominates the weight of the evidence," the error was not cured by other instructions in which the jury was correctly charged that it was incumbent on the State to prove every essential element of the offense charged beyond a reasonable doubt, and that defendant should be acquitted if the evidence was sufficient to raise a reasonable doubt as to the sanity of defendant at the time of the act.    p. 469.

From Clark Circuit Court, *Harry C. Montgomery,* Judge.

Prosecution by the State of Indiana against John Fritz. From a judgment of conviction, the defendant appeals. *Reversed.*

*E. C. Hughes,* for appellant.

*Thomas M. Honan,* Attorney-General, *Thomas H. Branaman, Edwin Corr* and *James E. McCullough,* for the State.

Cox, C. J.—Appellant was convicted of murder in the first degree, the jury fixing as punishment therefor the death penalty.

On September 2, 1907, appellant, then a boy little past sixteen years of age, was sentenced to the Indiana Reformatory to serve an indeterminate term of from one to fourteen years for grand larceny. His early life had been hard. His home surroundings were not good. He had worked in the stone quarries from the age of ten years, with companion laborers whose association had no tendency to refine his character. He had little schooling. His father and one brother were in the state prison for a crime of violence.

Another brother was an inmate of the Indiana Reformatory. During the period of his confinement appellant's health was not good, and he suffered from numerous ailments, some of them serious. For the first two years of his indeterminate term his deportment was good and his prison record clean. The first report against him was October 20, 1909, for having tobacco in his possession, and for that offense sixty days were taken off his "good time." Other offenses of varying kinds, against the discipline of the institution, followed after this, which were met with punishments, from deprivation of "good time" to a severe form of solitary confinement. His infractions of discipline increased. On November 20, 1911, he told Hiram B. McWilliams, a guard, that he was sick. McWilliams sent him to the doctor, who found him ailing, but, he claimed, not sick enough to cease his work. On the afternoon of the following day, while appellant was at work in the chair shop and McWilliams was on duty there sitting at the officer's station, appellant suddenly left his bench, grasped a hammer, walked over to McWilliams, struck him twice on the head with it, and killed him. There had been no trouble between them that day, and before that McWilliams had treated appellant kindly. He had before reported breaches of discipline on appellant's part on two occasions, once about two years before, but other officers had reported him more times.

Counsel for appellant makes no claim that there was any defense for appellant to the charge of murder in the first degree, except on the ground that at the time of the commission of the act resulting in McWilliams' death appellant was insane. And on this issue testimony was given for and against appellant.

One of the errors assigned and relied on for a reversal of the judgment of the trial court is the overruling of

1. appellant's motion for a new trial. The giving of instruction number three by the court on its own

motion was assigned as a cause for a new trial, and it is earnestly contended by counsel for appellant that it should work a reversal of the case. This instruction is as follows: "You may believe a witness either in whole or in part, or entirely believe or disbelieve his testimony. In arriving at a verdict in this case you are to do so on the whole evidence and testimony in the case. If the testimony of the witnesses conflicts, then it is your duty to reconcile the conflict, if you can; but if you cannot, then you have a right to give credit to and believe that testimony which appears to you to have the most weight, reject the rest, and to give the verdict to the side on which predominates the weight of the evidence."

The Attorney-General very properly concedes that the instruction was erroneous. It was clearly error to tell the jury "to give the verdict to the side on which predominates the weight of the evidence." One cannot be convicted of even a minor crime or misdemeanor merely by a preponderance of the evidence. Nor can a defendant be required to prove himself guiltless by a preponderance of the evidence. On the one hand, the evidence against one charged with a crime must prove every element of the offense beyond a reasonable doubt before there can be a .conviction; and on the other the evidence favorable to the accused need only be sufficient to raise a reasonable doubt of the establishment of any one essential element of the crime, to require an acquittal. §2137 Burns 1908, Acts 1905 p. 584, §261; Hiler v. State (1838), 4 Blackf. 552; Hipp v. State (1839), 5 Blackf. 149, 33 Am. Dec. 463; Wade v. State (1880), 71 Ind. 535; Plummer v. State (1893), 135 Ind. 308, 34 N. E. 968; Hinshaw v. State (1897), 147 Ind. 334, 379, 47 N. E. 157; Hauk v. State (1897), 148 Ind. 238, 254, 46 N. E. 127, 47 N. E. 465; Osborn v. State (1905), 164 Ind. 262, 271, 73 N. E. 601.

It is axiomatic that without a criminal intent there is no crime, and without mental capacity for it there can be no criminal intent. Appellant's sanity, men-

tal capacity to form the intent to kill, was, if in issue,
5. an essential element of the offense with which he was
charged. This element the State was bound to prove
beyond a reasonable doubt, and not merely by a preponderance of the evidence. The evidence of appellant's insanity
need not predominate in weight over that going to show his
sanity, if the jury found it sufficient to raise a reasonable
doubt of his sanity, the law requires an acquittal. *Polk* v.
*State* (1862), 19 Ind. 170, 81 Am. Dec. 382; *Stevens* v.
*State* (1869), 31 Ind. 485, 99 Am. Dec. 634; *Guetig* v. *State*
(1879), 66 Ind. 94, 32 Am. Rep. 99; *McDougal* v. *State*
(1882), 88 Ind. 24; *Plake* v. *State* (1890), 121 Ind. 433, 23
N. E. 273, 16 Am. St. 408; *Plummer* v. *State* (1893), 135
Ind. 308, 320, 34 N. E. 968.

But a reversal of the cause is sought to be avoided by an
earnest contention by the Attorney-General that the error
did not harm appellant. Were the question of ap-
6. pellant's sanity eliminated, this position of counsel
for the State could hardly be successfully combated,
for it is conceded by counsel for appellant that there is no
real conflict in the evidence except on the question of appellant's sanity, and it would seem that with this not involved, every fact necessary to constitute murder in the
first degree was established, with no conflicting evidence.

It is the claim of the Attorney-General that no question
of appellant's insanity or any evidence relating to it can
be considered, for the reason that that question was
7. not raised under the issues. Section 198 of the code
of criminal procedure (Acts 1905 p. 584, §2069 Burns
1908) provides that under the general issue of not guilty
pleaded orally any matter of defense may be proved except
insanity. Section 199 of said act (§2070 Burns 1908) provides that when a defendant desires to plead that he was
of unsound mind at the time the offense was committed,
he himself or his counsel must set up such a defense specially
in writing, and the prosecuting attorney may reply thereto

by a general denial in writing. It has been decided, as the statute clearly requires, that under these provisions, when insanity is relied on as a defense it must be specially pleaded. *Sage* v. *State* (1883), 91 Ind. 141, 145; *Walker* v. *State* (1894), 136 Ind. 663, 36 N. E. 356. No such special plea was entered for appellant, but his counsel relies for authority to raise the issue and try it in this case without the special and under the general plea, on §16½ of the act approved March 5, 1909 (Acts 1909 p. 202). This act is entitled, ''An Act authorizing and providing for the establishment of a 'hospital for insane criminals' as a part of the 'Indiana state prison,' making appropriations therefor, providing for its government and maintenance, defining the manner of holding insanity inquests·in cases of convicts alleged to be insane and for their transfer and discharge, repealing all laws in conflict and declaring an emergency.'' Section 16½ of the act provides: ''After the passage of this act, if upon the trial of any male person accused of a felony the defense of insanity is interposed whether upon a special plea or a general plea of not guilty, the court or jury trying said cause shall make a finding both as to the sanity of said defendant at the time so claimed and as to whether he committed the act so charged. And if it shall be found in favor of said defendant on such plea of insanity but against him as to the commission of the act as charged, he shall upon order of the court be committed to and confined in the Indiana colony for the insane criminals in like manner and on such conditions and for such terms as is now provided for by law for the confinement of insane criminals in a state hospital for the insane.''

In an attempt to remove any question of appellant's insanity from the issue, and so show that the instruction under consideration did not harmfully affect any right of appellant involved in the trial, it is contended in behalf of the State, that this section is in violation of constitutional pro-

visions, and is void. There may be grave doubts of the validity of the section as claimed by the Attorney-General. It may be in violation of article 4, §19, of our State Constitution, which provides that every act shall embrace but one subject and matters properly connected therewith. And it may violate that clause of article 4, §22, which prohibits the General Assembly from passing a special law regulating the practice in courts of justice. But these questions we decline to determine, for the reason that in the trial of the cause the court and the parties assumed the section in question to be a valid enactment and to permit appellant to present the issue of his sanity under his general plea of not guilty. Under it he was permitted, without objection from the prosecuting attorney, to introduce testimony to prove that he was insane at the time of the commission of the alleged criminal act. This official met this testimony with testimony given in rebuttal to prove that appellant was sane at the time.

The court, on its own motion, and at the instance of both the State and the defendant, instructed the jury on the law in relation to this issue of insanity. The general rule is that the appellate tribunal will act on the theory voluntarily assumed in the trial court, and we know of no reason why this rule should not apply with full force in this case. No reason is apparent for exempting the State from the force of the rule, and permitting it, on appeal, for the first time, to claim its own enactment unconstitutional for the sole purpose of evading the effect of a manifestly harmful error.

The fact that other instructions were given to the jury by the court, in which the jury was correctly charged that it was incumbent on the State to prove every essential 9. element of the offense charged against appellant beyond a reasonable doubt, and that if the evidence was sufficient to raise in the minds of the jurors a reasonable

doubt of the sanity of appellant at the time of the act charged he should be acquitted, could not render innocuous the erroneous instruction given. This condition left the jury free to follow error or truth. *Bradley* v. *State* (1869), 31 Ind. 492; *Kisland* v. *State* (1873), 43 Ind. 146, 13 Am. Rep. 386; *Plummer* v. *State, supra,* and cases there cited.

Other claims of prejudicial error are presented. But it is hardly possible that they can arise on another trial, and as the case must be reversed for the error in giving instruction three, they are not considered.

The judgment is reversed, with instructions to the trial court to grant appellant a new trial.

NOTE.—Reported in 99 N. E. 727. See, also, under (1) 12 Cyc. 622; (2) 12 Cyc. 492; (3) 12 Cyc. 490; (4) 12 Cyc. 147, 164; (5) 12 Cyc. 496; (6) 21 Cyc. 1094; (7) 12 Cyc. 363; (8) 2 Cyc. 670; (9) 12 Cyc. 931. As to the doctrine of reasonable doubt in criminal prosecutions, see 48 Am. St. 566. As to insanity as a defense to crime, see 63 Am.. St. 100; 76 Am. St. 83. As to the burden of proving insanity in criminal prosecutions, see 97 Am. Dec. 176. As to the burden and *quantum* of proof on the issue of insanity in criminal cases, see 3 Ann. Cas. 926; 15 Ann. Cas. 95.